UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN DELANO DANIEL             CIVIL ACTION NO. 12-cv-2171

VERSUS             JUDGE WALTER

CITY OF MINDEN, ET AL             MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

      John Delano Daniel ("Plaintiff") filed this civil rights action against the City of Minden and city police officers Spencer Tippen, Sean Henderson, and Chase Wimberly. He alleges that the officers wrongly arrested him and subjected him to excessive force. Before the court is a Motion to Dismiss (Doc. 29) filed by the all four defendants. For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

**Relevant Facts**

      Defendants may file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and challenge a complaint for failure to state a claim on which relief may be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007). Defendants labeled their motion as a motion to dismiss, and they specifically invoke Rule 12(b)(6), yet they offer a version of the facts not from the complaint but from an unsworn arrest report and accompanying "affidavit" that they attach to their motion.

Plaintiff correctly responds that the unsworn submissions are both outside the scope of a Rule 12(b)(6) motion and not competent summary judgment evidence for a Rule 56 motion. Plaintiff, out of caution, offers his own affidavit in case the court were to decide to convert the motion to one for summary judgment. The undersigned finds that the better course, given the lack of competent evidence from the defendants, is to ignore the extra-complaint submissions and decide the motion under the Rule 12(b)(6) standard invoked by the movants. Accordingly, the relevant facts are those alleged in Plaintiff's complaint.

According to the First Amended Complaint (Doc. 22), Plaintiff was living in Minden in 2011 when he received a call from a friend, Lisa Cooper, who requested a ride to the LSU Medical Center in Shreveport. Plaintiff went to Cooper's home in Minden and was sitting in the backyard visiting with another man, as he waited on Cooper to get ready. ¶¶ 1-9.

Minden police officers Tippen, Wimberly, and Henderson entered the backyard about 6:30 p.m. They had no reasonable suspicion, warrant, or consent to justify the entry. Tippen asked Plaintiff his name and ordered him to stand up. Tippen then told Plaintiff that he was under arrest for disturbing the peace. Plaintiff told Tippen that he was not disturbing the peace, and he explained his presence at the home. Plaintiff "had committed no act to constitute disturbing the peace." ¶¶ 10-11.

The three officers then seized and arrested Plaintiff rather than issue him a summons for the alleged misdemeanor offense. To make the arrest, Tippen grabbed Plaintiff by the wrist and twisted his arm up behind his neck and back. Tippen ordered the other officers to

grab and twist Plaintiff's elbows, and they forcefully did so. Plaintiff, age 65, told the officers that he had a tendon torn from the rotator cuff in his shoulder and that they were putting him in a lot of pain. The officers refused to abate their actions. ¶ 12.

Plaintiff was handcuffed behind his back. He complained that the handcuffs were too tight and requested that he be cuffed in the front of his body. The officers instead shoved him toward a patrol car without checking or loosening the cuffs. They shoved Plaintiff face first into the backseat of the car, where he had to ride in an awkward and painful position. ¶ 13.

Plaintiff was taken to jail. When Officer Tippen removed the handcuffs, he put his knee in Plaintiff's back with such force as to cause Plaintiff to lose consciousness. Plaintiff alleges that each of the officers had time to intervene and stop the use of force by the other officers, but they did not. Plaintiff was released from jail the next day without a court appearance. He was instead issued a summons, but the disturbing the peace charge was either dismissed or not prosecuted. ¶¶ 15-16.

**Rule 12(b)(6) Standard**

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

The facts alleged, taken as true, must state a claim that is plausible on its face. Amacker v. Renaissance Asset Mgmt. LLC, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Id. (quoting Twombly, 127 S.Ct. at 1965).

**City of Minden**

Plaintiff's complaint sets forth counts of false arrest, excessive force, and failure to intervene against the individual officers. Plaintiff includes in the allegations under each count assertions that the City of Minden is also liable because it failed to properly train the officers in the law of disturbing the peace, arresting senior citizens, arm-bar takedown methods, handcuffing techniques involving geriatric suspects, and the like. No particulars are provided about the training that is provided, where it falls short, or whether other constitutional violations have stemmed from the same deficiencies.

A municipality such as Minden may be liable under Section 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011), quoting Monell v. Social Services of New York City Dep't, 98 S.Ct. 2018 (1978). This requires a plaintiff to prove that action pursuant to official municipal policy caused his injury. Official

policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id. A local government's decision not to train certain employees about their legal duty to avoid violating a citizen's rights may rise to the level of official government policy, but only if the failure to train amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Id. at 1359-60; Prince v. Curry, 423 Fed. Appx. 447, 450 (5th Cir. 2011).

A claim for failure to train must allege sufficient facts to show that (1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury. Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010). Complaints typically satisfy the first element by alleging facts related to the town's actual training program. Speck v. Wiginton, 606 Fed. Appx. 733, 736 (5th Cir. 2015). As for deliberate indifference, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to make this showing. Id.

Defendants argued in their motion that Plaintiff's allegations did not make out a policy or custom claim against the City of Minden or against the officers in their official capacity (which claims are treated as if against the City). Plaintiff conceded on the first page of his memorandum (Doc. 34) that he is at this stage "unable to produce specific facts to establish a federal Monell claim," but he asks the court to keep the City as a defendant because of its

potential vicarious liability for state law torts committed by the officers in the course and scope of their employment. At page 14, however, Plaintiff appears to back off his concession. He argues there that his allegations, even if boilerplate, are sufficient to support a cause of action against the City under Section 1983. He then confuses the issue again by stating that he "believes that such a cause of action does exist but will need to thrash out the facts in discovery." Thus, it is not clear whether Plaintiff concedes that he has not alleged a viable Monell claim, and the court will have to address the issue.

Plaintiff has not offered any specific facts regarding the City's actual training or aspects of it that were lacking, and he has not alleged any prior incidents or other facts that could allow an inference of deliberate indifference by the City with regard to such failures. It is not enough to simply allege that Plaintiff's injury could have been avoided through better training or that discovery will flesh out the claim. Easter v. Caldwell, 2015 WL 1281022, *8 (W. D. La. 2015) (Foote, J.) (granting Rule 12(b)(6) dismissal of failure to train claims against city marshal and sheriff); Ulrich v. Scott, 2015 WL 1276470, *5 (W. D. La. 2015) (Hicks, J.) (granting Rule 12(b)(6) dismissal of conclusory failure to train claim against a city). The same result is warranted here. The court should grant the motion by dismissing all Section 1983 claims against the City of Minden and the three officers in their official capacities. The City remains as a defendant because of its potential vicarious liability for state law claims. The claims against the officers in their individual capacities will be addressed below.

**Individual Officers**

    **A. Qualified Immunity**

The individual officers assert the defense of qualified immunity. An individual defendant is entitled to qualified immunity from claims for money damages unless the facts alleged, taken in a light most favorable to the Plaintiff, show that the defendant's conduct violated a constitutional right that was clearly established at the time of the violation. See Saucier v. Katz, 121 S.Ct. 2151 (2001). Each defendant's entitlement to immunity must be examined separately. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). In a Rule 12(b)(6) contest, that means the Plaintiff must point to portions of his complaint "that state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

    **B. False Arrest**

To prevail on a Section 1983 false arrest claim, Plaintiff must show that the arresting officer did not have probable cause to make the arrest. Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). A law enforcement officer who reasonably but mistakenly concludes that probable cause is present is entitled to qualified immunity. Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000). On the other hand, "a qualified

immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause." Id.

Plaintiff alleges that he "was not disturbing the peace," explained his lawful presence at the home to the officers, and "had committed no act to constitute disturbing the peace." Under the facts alleged by Plaintiff, which must be accepted for purposes of this motion, he was lawfully present on the premises and minding his own business when he was arrested without cause. Those allegations are sufficient for the false arrest claims to survive Rule 12(b)(6) and qualified immunity scrutiny.

### C. Unlawful Entry

Plaintiff's first amended complaint, under the count for false arrest, also asserts that the officers "wrongfully entered the property" and arrested Plaintiff without cause. The main body of the complaint alleges that the officers had no warrant, consent, or a reasonable suspicion to enter the premises. Amended Complaint, ¶¶ 10 and 19.

Defendants argue in their motion that Plaintiff does not allege that he owned the premises or had any standing to complain about an officer's entry onto it. Plaintiff does allege that he was at his friend's home, sitting in the backyard and waiting on her as a "guest and invitee of the homeowner." Plaintiff alleges that he had a reasonable expectation of privacy in the yard, but the only authority he cites for a Fourth Amendment claim is Minnesota v. Olson, 110 S.Ct. 1684 (1990), which held that an overnight guest in a dwelling had an expectation of privacy that society is prepared to recognize as reasonable under the

Fourth Amendment. The Court noted that it had rejected in an earlier case the argument that merely being "legitimately on the premises" was sufficient to grant standing to challenge a search. Id. at 1688. See also Minnesota v. Carter, 119 S.Ct. 469 (1998), ("an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not") and U.S. v. Rios-Davila, 530 Fed. Appx. 344 (5th Cir. 2013) (invited visitor at residence did not have standing to challenge search that began when officers entered backyard without probable cause).

For Plaintiff to overcome the qualified immunity defense, he must show that the law was so clearly established that any reasonable officer would have known that entry into the yard to arrest Plaintiff violated Plaintiff's Fourth Amendment rights in the specific situation confronted by the officers. Mullenix v. Luna, 136 S.Ct. 305, 309 (2015). Plaintiff has alleged only that he was lawfully present as a temporary invitee in the backyard. He sets forth no additional facts to flesh out a basis for a reasonable expectation of privacy, and he cites no cases that have recognized a Fourth Amendment violation in the context of the facts he does present. Defendants are, therefore, entitled to qualified immunity on Plaintiff's claim of unlawful entry.

### D. Excessive Force

Plaintiff alleges that the three officers subjected him to excessive force. When a person who has been arrested asserts that officers used excessive force in violation of the Fourth Amendment, the question is whether the officer's actions are "objectively reasonable"

in light of the facts and circumstances. Graham v. Connor, 109 S.Ct. 1865 (1989). To overcome an officer's claim of qualified immunity, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

Plaintiff alleges that Officer Tippen grabbed his wrist and twisted his arm behind his neck and back, and then the other two officers joined Tippen in forcefully twisting and pulling Plaintiff's arms behind his back despite Plaintiff telling them that he had a torn tendon in his shoulder and they were putting him in a lot of pain. Plaintiff also accuses Tippen of, after reaching the station, putting his knee in Plaintiff's back while removing the handcuffs, to such an extent that Plaintiff lost consciousness. Plaintiff suffered injury to his shoulder, back, wrist, and hand, that caused severe pain and have adversely affected his ability to perform many daily living activities without pain.

There are no facts in the complaint that would warrant such a use of force, which appears to be clearly unreasonable under the circumstances alleged, so these allegations state actionable claims. Officers Wimberly and Henderson argue that they should not be liable for the use of force involved in the removal of the handcuffs, as only Tippen is alleged to have applied that force. Plaintiff alleges, however, that Officers Spencer and Wimberly "had time to intervene and stop the use of force" by Tippen but did not. Bystander liability of an officer may be established where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Kitchen v. Dallas County, 759 F.3d 468, 480 (5th Cir. 2014). This law has been clearly established for many years. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). Plaintiff's allegations are sufficient to make out a claim against the other officers under this theory.

Plaintiff alleges that after he was handcuffed he complained that the handcuffs were "too tight" and requested that they be moved to the front of his body. The officers did not check the cuffs or loosen them, and instead shoved Plaintiff in the backseat of the car and took him to jail. A mere contention that an officer put handcuffs on too tightly, causing a wrist to swell, has been held to not amount to excessive force in the absence of an allegation of malice or other factors. Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001). See also Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) (bruising on wrist and arms because handcuffs were too tight during 30 to 45 minute stay in patrol car was not excessive force).

Plaintiff has not squarely alleged that the handcuffing was done for malice or in a manner objectively outside the scope of handcuffing in the ordinary course of an arrest, nor has he alleged any particular injuries stemming from the handcuffs that would rise to the level recognized by the Fifth Circuit as implicating the Constitution. Defendants are entitled to dismissal of the excessive force claim as it relates to the handcuffing alone, but the facts surrounding the handcuffing may still be relevant to the actionable excessive force claims that allegedly happened before and after the application of the handcuffs. Plaintiff argues that he also has an excessive force claim under state law that would encompass the handcuffing and other actions. Defendants have not squarely attacked any state law claims in their motion, so any such claims remains to be addressed by other means.

Accordingly,

**IT IS RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 29) be granted in part by dismissing Plaintiff's (1) Section 1983 claims against the City of Minden and the three officers in their official capacities, (2) Section 1983 claim based on alleged unlawful entry of the premises, and (3) Section 1983 excessive force claim based on the allegation that his handcuffs were applied too tightly. It is recommended that the motion be denied in all other respects. All defendants should remain as parties to the action.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)©) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of November, 2015.

Mark L. Hornsby
U.S. Magistrate Judge